The first case today is 161145, David Alan Turner v. United States. Good morning, Your Honors. Mr. Turner has filed a motion with the Court seeking permission to file a second or successive petition pursuant to Section 2255. His petition or his motion to this Court contains a new rule of constitutional law made retroactive by the Supreme Court, and he therefore respectfully submits that the motion should be allowed. Now, the government, through two different lawyers, has presented the Court with two different arguments why Mr. Turner's motion should be denied. First, through original counsel, the government has essentially made a merits argument to this Court, arguing that there are sufficient textual differences between 924C's residual clause and the ACCA residual clause struck down in Johnson that makes or would allow a 924C residual clause to survive a vagueness attack. This textual argument fails for three reasons. First, in Johnson, Justice Scalia made it clear why the ACCA residual clause was unconstitutional when he wrote that there were, quote, two features of the residual clause that conspire to make it unconstitutionally vague. And the two features were the categorical assessment of the crime, not tied to particular facts, and that categorical assessment tied to the language potential serious risk rendered that particular residual clause unconstitutional. And so it was not the other textual distinctions that the government highlights in their original brief that rendered the ACCA residual clause unconstitutional. Second, in what Excuse me, counsel, but aren't you falling right into the trap that the government is setting? As you started out by saying, that is a merits argument. Right. And we don't have to resolve the merits in order to grant you the relief that you're seeking here. Couldn't agree more. And we're at a prima facie analysis. Two circuit courts have already concluded that identical language is unconstitutional. Government counsel admirably notified me right prior to argument that the Fifth Circuit decision, Gonzalez-Longoria, has been vacated. It's going to be heard on bonk, apparently. But the Seventh and Ninth have already ruled that identical language is unconstitutional. We're at a prima facie analysis. And clearly at this stage, Mr. Turner has met that burden of making a prima facie presentation that Johnson applies to him. And so through new counsel, the government has a new argument raised for the first time in a supplemental brief. And that argument is essentially that Mr. Turner is not looking to apply the rule of Johnson but is instead looking to extend Johnson and have this court declare a new rule. In essence, the government wants you to hold that the holding or find that the holding of Johnson is very narrow. That is that the ACCA residual clause is unconstitutional. And I respectfully submit that that is not the new rule that was announced in Johnson. The new rule that was announced in Johnson is that a residual clause that ties judicial assessment of risk to a judicially imagined ordinary case of a crime, not real world facts, is unconstitutionally vague. I'll state it another way. When a court must decide what a usual or ordinary violation entails and then determines how great a risk that imaginary case presents, a residual clause resulting in decades of imprisonment is unconstitutionally vague. And we know that that's the new rule. Do you think, therefore, the Shepard case is going to be overruled? I don't know that I'm in a position, Judge Lynch, to. No, none of us are. But there is a certain implications of your position, which would reverberate throughout. In any event, your task is to make a prima facie case in response to the government's second argument. Do you want to get to that? Sure. If you don't mind, just before you leave this point, if the rule that Johnson announced has to do with judicial characterizations of risk, isn't that a problem for the 924C argument where I thought the jury decided the level of risk under 924C? Well, in this case, Judge Howard, when this court rejected Mr. Turner's appeal, it was a categorical assessment made by this court that his crime, conspiracy to commit Hobbs Act robbery, as a categorical assessment qualified as a crime of violence. And so in this case, it was the categorical assessment that the Supreme Court has declared to be unconstitutional when tied to some judicially imagined case. And so here, I respectfully submit that Mr. Turner has very clearly made his prima facie case that his petition contains or relies upon a new rule of law. The 924C language is materially indistinguishable from the ACCA residual clause. It did call for a categorical assessment in this case. It did call for a judicially imagined idealization of what this crime would entail, and it did tie that to an assessment in terms of substantial risk. And so for all of those reasons, this petition does contain a new rule of law. It does rely on a new rule of constitutional law. Welch has now removed the retroactivity obstacle to Mr. Turner's petition, and so I would respectfully submit that he has, in fact, made a prima facie demonstration that he is satisfied to the gatekeeping requirements. If we were to agree with you and send this back to the district court, and if the district court were to agree with the merits of your argument, what then happens? The court goes into resentencing? That's correct. And what effectively happens to the sentence in this case? Well, effectively, there were two 924C counts in this case. My position would be that those convictions would need to be vacated. The court would then sentence Mr. Turner based on the remaining counts. And what was his sentence, and what do you anticipate the reduction in the sentence to be? Frankly, I have no idea what Judge Stearns might or might not do in terms of the ultimate sentence. I think there's a 20-year statutory maximum punishment for the remaining counts is my understanding. And unless the court has further questions, thank you. Good morning, Your Honors, and may it please the court. Michael Rotker from the Department of Justice on behalf of the United States. I think in response to the questioning, really the issue before the court, what it really comes down to is what must be shown to make a prima facie case. Now, my able adversary this morning is basically saying that he's made a prima facie case, but he's never really expounding upon what that means. And as I understand his position in the filings, it's basically, as long as a constitutional claim is sort of sufficiently debatable, that's enough to kind of constitute a prima facie case for purposes of H-2. And I would respectfully disagree. I think that the standard for prima facie showing under H-2, or under 2244's gatekeeping provisions which are incorporated, is much more demanding for a couple of reasons. First of all, the debatable constitutional standard sounds very much like what the court would apply in deciding whether to grant a certificate of appealability. But that's, of course, something that we deal with in a first 2255. This is a second 2255. And as the court said in its decision in United States v. George, just as a direct appeal is more defendant-friendly than a first 2255, a first 2255 is more defendant-friendly than a second, which is an awkward way, I think, of saying that the standards for successive applications under 2255, it's deliberately set by Congress as a very high bar. And the question of what a prima facie showing is in the government's view is not simply whether the constitutional claim is debatable. In fact, I think that points in the exact opposite direction. If the claim is debatable, then it means, by definition, that the rule upon which the application is based is not the rule that was announced. In other words, and that is our basic position in this case. All right, so phrase for us what the government says a prima facie case requires. Thank you. The elements are. That the defendant must make a showing that his claim is based upon a new rule of constitutional law that has been made retroactive by the Supreme Court and that was previously unavailable. He has to make a showing that all four of those statutory elements under H2 have been satisfied. In this case. Wait a minute. If he has to make a showing that all four of them have been satisfied, that's no different from saying he wins on the merits. Correct. And I should qualify that. I don't mean to say he has to prove a conclusive entitlement to relief. He has to make a showing. Yeah, but that's what we're. Right. Everyone agrees what the elements are. Right. All right. What we're talking about here is the nature of the showing. Correct. That must be made. You say a showing that his claim to each of the four elements. Right. Is fairly debatable isn't enough. All right. You agree that he doesn't have to prove absolutely. Correct. That he is entitled. So what's your middle ground? What is there between fairly debatable and entitled that would constitute the showing? It's a very good question, Your Honor. I don't know that I have a semantic way of articulating it, but what I can say is this. It's not enough. Let's look at, for example, I know it's not an issue in this case, but let's look at the retroactivity requirement. No, no, but before you start giving me examples. Sure. You appreciate what our problem is. I do. Our problem is that we have to articulate a principle. Yes. That will guide future courts. Right. All right. So it's not enough for us to say, well, it's somewhere in between these two things, but we can't articulate what that is. I understand, Your Honor, and I appreciate the question. I think what I would say, because this case is really focused on the new rule, the first requirement of the statute, and what we would say is that to make a prima facie showing, the defendant has to identify an on-point rule of law that is applicable in his case. Can't he argue by logical necessity it would apply to this case? Isn't there sufficient authority for that proposition? There is on the retroactivity component, and if we assume that there is sufficient authority for that on the new rule requirement, Your Honor, I will accept the premise of the question. I don't think this is a case where it's logically necessary at all. And, again, I also appreciate the questioning that we're not dealing with sort of a full-blown merits assessment, but my opponent seems to think that it's sort of a fait accompli that Johnson invalidates the residual. No, but when you say you don't think it necessarily is a logical necessity, doesn't that make it debatable? If that's your strongest point. Right, but I don't think, debatability as to the merits is not sufficient. I was trying to say, I guess, in response to Judge Sellian, maybe I wasn't clear. No, I'm just trying to get it pinned down so that I understand. I do. I appreciate that, and I'm sorry if I'm being vague. I think that the first thing he has to show is a new rule of constitutional law, and he has to show that that rule of law is applicable by its terms to the circumstances of his case. It's not enough to show that maybe it will be someday extended. No, let me get it. But there's a difference between maybe applicable and maybe extended. He's not arguing for an extension. What the petitioner here is arguing, as I understand it, is that take the Johnson rule, the way the Supreme Court articulated it, and when you apply it to 924C, the provision that's at issue here, that is going to determine the matter because that rule, as applied there, is going to be enough to invalidate the statutory provision and grant relief. All right? You seem to regard that as an extension. Yes. And it seems to me that that's a narrower conception than I would have thought because you are, in effect, saying that the only way you can have a new rule for this purpose is if the defendant is challenging the exact same statute that the Supreme Court has already invalidated rather than a statute which looks like that statute. Thank you, Judge Scalia. Yes, I think that you've encapsulated our view, and I do think we take a very narrow view of the matter. And I think I would just point out, to the best of our knowledge in preparing for this argument in the briefing, we're not aware of any cases where this Court has actually done that sort of thing. Let me phrase it more positively. The cases where this Court has granted authorization have always involved a new rule that is squarely on point. So, for example, in Pecala, the Court was dealing with an ACCA residual clause claim, and it was directly on point. In Evans-Garcia, the Court was dealing with the Miller rule about juveniles and life sentences, directly on point. Now, look at the Sixth Circuit decision, which we've cited to an in-rate Garner, which illustrates, I think, the way this case should come out. In Garner, the defendant sought authorization to file a successive motion based on Roper v. Simmons, which is a Supreme Court decision holding that the Eighth Amendment prohibits the execution of a defendant who is under the age of 18. Now, Garner, the defendant in that case, said, yeah, I'm over the age of 18, but because of my upbringing and my mental capacity, I really only have the intellect or the mental age of a 14-year-old. And so I should really be subsumed within the rule of Roper. And the Sixth Circuit denied the application. And they said, look, there may be reasonable arguments why Roper will be extended to that situation, but on a successive application, we take the law as we find it at a moment in time. It's not the Court's province in a successive, and to announce and articulate a new rule of law. Excuse me. You keep referring to the case as Garner. Is that the case I would think of as Taylor? No, Your Honor. I'm referring to a Sixth Circuit decision that's referred to in our supplemental brief called In Re Garner from 2011. So it's not the Sixth Circuit's decision in Taylor? No, the Taylor decision is the recent case that upheld 924C against a residual clause challenge. This is a case on successives dealing with authorization. And what the Sixth Circuit reasoned is that you take the law as it stands at a moment in time. And I would point out that the view that this Court's role in the gatekeeping capacity is very narrow is also consistent with the statutory text. Because remember, when Congress authorized this Court to sit as a gatekeeper, it made the proceedings expedited. It wanted the Court to make a quick up or down determination within 30 days. And as the Supreme Court said in Taylor v. Cain, the whole point of that expedited procedure is to obviate the need for the Court to engage in difficult legal analysis of these issues. That really the way the system is supposed to work, stepping back, I think, from a global perspective, the Court's appeals as they have today since Johnson are really grappling with whether and to what extent that decision may apply outside of the ACCA context in cases on direct review. Maybe even in first 2255s. But when we get to the point in time where we're at a successive 2255, the law is sort of frozen in time. And it's not, again, in Evans-Garcia there was no problem because the Miller Rule was on point. In Pacala there was no problem because it was ACCA. It was on point. But look at Garner. Garner took the view that we think is correct, which is to say, look, maybe there are reasonable arguments why a mental age rule for Roper purposes is justified. But we can't make that determination for the first time in a successive collateral attack. And I would just emphasize, too, Tyler versus Kane also has some very helpful language on this point that we think supports our view. And I may run out of time, but I'll try to get the answers as succinct as I can. The issue in Tyler was whether a particular constitutional rule had been made retroactive by the Supreme Court. And the defendant's primary argument was that a later Supreme Court case had effectively made the rule retroactive. And the Supreme Court said, no, that's not correct. And the reasons why really aren't germane to the point that I'm making here today. The defendant also went on to say, though, even if the Supreme Court hasn't already made the rule retroactive, you, the Supreme Court, can make it retroactive here and now in my own case, and I will get the benefit of that rule, and then I can obtain authorization. And in the last paragraph of the opinion in Tyler versus Kane, the Supreme Court rejected that out of hand. And it said, no, the defendant, you have the burden. You have to come forward and demonstrate all the requirements to obtain a successive. The mere fact that we haven't already made the rule retroactive defeats your claim. We can't do it for the first time here and now. Now, I concede that Tyler was dealing with a retroactivity requirement, not the new rule requirement. But I still think it underscores the idea, and my light is going to come on if I may just finish. I think it underscores the idea that the whole statutory purpose behind the successive was really to constrain the ability of the courts to be breaking new ground. That that's the province of this court and every other court of appeals in cases on direct review. And so at a minimum, a prima facie showing, the defendant has to point to a new rule of law that's on point. If there's any daylight between the two, then we're dealing more with what's an extension of the law rather than its application. Now, I would concede. Okay. So with respect to the new rule point, though, your position would be that the one-year statutory bar just has no application here because this is a premature filing. Is that correct? I'm sorry. You mean the statute of limitations? Yes. Our view, I think, to answer your question, our view is that the court can and should simply deny this application without prejudice. And if and when the issue is ultimately resolved by the Supreme Court, as seems likely, because we're dealing with the constitutionality of a federal statute, seems likely that the issue is going to wend its way to the court. At that time, if the court announces a decision in United States v. Doe and proves, contrary to our position here, that Johnson is applicable to 924C, then the one-year would restart at that, presumably the one-year would restart at that juncture. It's conceivable the Supreme Court could write an opinion that might make it clear that it was dictated by Johnson. But we could assume, for the sake of argument, the court would write an opinion and it would say. But what would the government's position be? We oppose on the merits. I'm sorry. On the statute of limitations, we would say yes. I can't answer the question concretely because it depends how the court writes the opinion. But if they say Johnson doesn't dictate the answer to this question, but we think its reasoning extends to 924C, that would restart the one-year limitations period. I'm a little concerned about the Department of Justice's discretionary decision to make certain concessions but not to make a concession on the question of new rule in this case. I'm not certain I follow the rationale for what the Department of Justice is doing or why there's an exception from your rationale for a second or successive petitions. Is it just that you think Teague would be under attack if you went so far as to make a concession on the second or successive petition? No, Your Honor. And we're not trying to give the appearance of any kind of impropriety in terms of the way we're approaching the litigation. But I think the concern is, frankly, that the district courts, we know anecdotally that the district courts are facing significant workload in terms of Johnson-related first applications. The numbers are staggering. And the courts, the chief judges, prosecutors, public defenders are all concerned about the workload. Our point is that if we start authorizing second or successives in cases where it's not squarely dictated by the rule of law, it's going to further inundate and burden the courts. And the whole point of the gatekeeping provisions, I think, is to limit the court's function so that it's really just mechanically saying, here's the claim, here's the law, has he made the showing? And if he hasn't, if there's any daylight between the two, and for the reasons we stated in our filing, we don't believe that Johnson controls 924C. The Supreme Court was very clear that it was in response to the arguments of the government and the dissent that it wasn't casting constitutional doubt on, much less invalidating any and all residual clauses. So where there's not an extension. And you'd rather have it teed up on a direct appeal. Yes. I think that's where it should be litigated, because the court would be free of the constraints imposed by EDPA that Congress deemed appropriate in the interest of a heightened finality. So this is really not, it's never really been a proper forum to make and announce new rules of law. There are exceptions, but the general rule is that we don't make and announce new rules of law. I think Tyler supports our view. I think Garner supports the view. I think the 30-day requirement suggests that the Supreme Court, that Congress really wanted the courts to be acting in a relatively expedited fashion and not to prolong these determinations. We don't want the court to have its hands tied. We just want the court to conduct a relatively mechanical process. It seems to me the barriers started to fall with our Evans-Garcia case. But you find it distinguishable because it involved the same rule. Yes. I don't think Evans-Garcia, I don't think the barriers fell. I think that was a proper application of the gatekeeping standards, just as in Pacala we think that the court was right in terms of the way it applied it. I'm just not aware of any precedent, and I'm not saying the court has never issued an unpublished order. It may be. But the prevailing overwhelming trend is to say if the rule of law isn't on point, then it's not something that can be authorized. And just to be clear, we did make it clear in our supplemental brief, and in response to what Judge Sellier was saying, he doesn't have to prove a conclusive entitlement to relief. There may be subsidiary factual issues. So one could imagine, for example, like Atkins versus Virginia, which said the Eighth Amendment prohibits the execution of someone who's intellectually disabled. If the defendant proffers evidence to show that he's got an IQ of 60 and he meets all the other requirements, the fact that the state could come back and say, well, his IQ is really 75, that's not going to negate a prima facie showing. Because the rule of law is still the rule of law. You can have a factual issue, and that wouldn't negate it. But I think that's very different than saying the rule of law hasn't yet been announced, but the court for the first time here and now should extend a precedent. Thank you. Thank you. I appreciate the court's time. Thank you, Your Honors.